JUDGE RAKOFF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**14** CV **3112**

2014 APR 30 P 7 57

U S DISTRICT COURT SDNY

---

TERMINAL CONSTRUCTION CORP.,

                    Plaintiff,

-against-

STEPHEN C. McINNIS, as President of UNITED
BROTHERHOOD OF CARPENTERS AND
JOINERS OF AMERICA, NEW YORK CITY &
VICINITY DISTRICT COUNCIL OF
CARPENTERS and UNITED BROTHERHOOD
OF CARPENTERS AND JOINERS OF
AMERICA, NEW YORK CITY & VICINITY
DISTRICT COUNCIL OF CARPENTERS and
JOHN/JANE DOE in their Official Capacity as
President of NEW YORK CITY & VICINITY
CARPENTERS DISTRICT COUNCIL, LOCAL
4112 and NEW YORK CITY & VICINITY
CARPENTERS DISTRICT COUNCIL, LOCAL
4112,

                    Defendants.

**CIVIL ACTION NUMBER:**

**COMPLAINT**

RECEIVED
APR 30 2014
U.S.D.C. S.D.N.Y.
CASHIERS

---

       Plaintiff, Terminal Construction Corp., by its attorneys, Peckar & Abramson, P.C., 70

Grand Avenue, River Edge, NJ 07661, as and for its Complaint against Defendants Stephen

C. McInnis ("McInnis") in his official capacity as President of United Brotherhood of

Carpenters and Joiners of America, New York City & Vicinity District Council of

Carpenters, and United Brotherhood of Carpenters and Joiners of America, New York City &

Vicinity District Council of Carpenters and John/Jane Doe in their Official Capacity as

President of New York City & Vicinity Carpenters District Council, Local 4112 and New

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

York City & Vicinity Carpenters District Council, Local 4112 (collectively "Defendants")

alleges the following:

## NATURE OF ACTION

      1.     This action seeks declaratory relief and a stay of arbitration pursuant to the

Declaratory Judgment Act, 28 U.S.C. § 2201, § 301 of the Labor-Management Relations Act of

1947, as amended ("LMRA"), 29 U.S.C. § 185, and the Federal Arbitration Act, 9 U.S.C. § 9.

## JURISDICTION

2.     This Court possesses jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and §

301(c) of the LMRA, 29 U.S.C. § 185.

      3.     Venue is proper in this District pursuant to § 301(a) of the LMRA, 29 U.S.C.

§ 185(a).

## PARTIES

      4.     Plaintiff is a general contracting and construction management firm with a

main office located at 215 State Highway 17 South, Wood-Ridge, New Jersey.

      5.     Defendant McInnis is President of the Union.

      6.     The Union is a labor organization within the meaning of the National Labor

Relations Act and the Labor Management Relations Act .

      7.     By Demand for Arbitration and Notice of Hearing ("Demand") dated April 10,

2014, the Union purports to commence an arbitration of a dispute before Arbitrator Roger

Maher whose offices are located at 23 83rd Street, Brooklyn, New York. (See Demand and

Grievance attached hereto as Exhibit "A"). The arbitration is scheduled for May 7, 2014 to

be held at the Union Offices in New York City.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

2

RIVEREDGE-#4003591

8.    Upon information and belief, the claims asserted by the Defendants arise out of work performed by workers on a construction project known as the Hudson Transmission Project ("Project") in Ridgefield, New Jersey.

9.    Any work performed by workers on this Project, and any disputes by such workers against Plaintiff, is governed by a Project Labor Agreement ("PLA"). (See Exhibit "B").

10.  The PLA requires disputes between the parties to the PLA to arbitrated in New Jersey before one of several named arbitrators, which does not include Arbitrator Maher.

11.  Upon information and belief, the grievance, despite the party named in the Demand, involves claims by New York City District Council of Carpenters Local 1456 ("Local 1456"). Plaintiff and Local 1456 are parties to the PLA.

### FIRST CLAIM FOR RELIEF

12.  Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which it has not agreed so to submit. Matarasso v. Continental Casualty Co., 56 N.Y.2d 264, 451 N.Y.S.2d 703, 436 N.E.2d 1305 (1982); AT&T Technologies, Inc., v. Communications Workers of America 475 U.S. 643 (1985); United Steel Workers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574 (1960); Litton Financial Printing Division v. NLRB, 501 U.S. 190 (1991); Williamsbridge Manor Nursing Home. Additionally, it is well settled that in the absence of an agreement to arbitrate, this Court may permanently stay the arbitration pursuant to CPLR § 7503(b). Matarasso, supra.

13.  There exists no valid, current or enforceable agreement with Defendants pursuant to which Plaintiff must arbitrate before Arbitrator Maher, in New York, the disputes giving rise to the Grievance and Demand.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

3

RIVEREDGE-#400359v1

14.     Since there is no agreement to arbitrate this dispute before Arbitrator Maher, Plaintiff cannot be caused to arbitrate the purported dispute before Arbitrator Maher on May 7, 2014 or any other date.  Therefore, this Court must enter an order declaring that the issue addressed therein is not arbitrable as set forth in the Demand and enter an Order permanently enjoining the aforesaid arbitration.

15.     No previous application has been made to this or any other Court for the relief prayed for herein nor has Plaintiff been served with or made application to compel arbitration pursuant to CPLR § 7503(a).

**WHEREFORE**, Plaintiff demands judgment against Defendants:

(a)     Declaring that the instant dispute between the parties is not arbitrable;

(b)     Declaring that Impartial Arbitrator Roger Maher or any other arbitrator and/or arbitration association shall have no authority to act as arbitrator in any dispute between Plaintiff and Defendants;

(c)     Temporarily, preliminarily and permanently enjoining, prohibiting, barring and restraining the arbitration with Plaintiff identified in Defendants' April 10, 2014 Demand for Arbitration and Notice of Hearing annexed hereto as Exhibit "A" ;

(d)     Temporarily, preliminarily and permanently enjoining, prohibiting, barring and restraining Defendants from attempting to arbitrate any further grievances and/or disputes with Plaintiff unless and until there is an agreement to arbitrate;

(e)     Awarding Plaintiff attorneys' fees, disbursements and costs of suit; and

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

4

RIVEREDGE-#400359v1

(f)   Awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated: April 30, 2014

PECKAR & ABRAMSON, P.C.

By:_____
Gregory R. Begg, Esq. (GB 0822)
Attorneys for Plaintiff
70 Grand Avenue
River Edge, NJ 07628
201-343-3434

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

5

RIVEREDGE:#400359v1

EXHIBIT A

# UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA

APR 14 2014

## NEW YORK CITY & VICINITY DISTRICT COUNCIL OF CARPENTERS

JOSEPH A. GEIGER
Executive Secretary - Treasurer

STEPHEN C. McINNIS
President

MICHAEL P. CAVANAUGH
Vice President



INSTITUTED AUGUST 12TH, 1881

395 HUDSON STREET - 9TH FLOOR
NEW YORK, N.Y. 10014
PHONE: (212) 366-7500
FAX: (212) 675-3118
www.nycdistrictcouncil.com

**REGARDING:**      **Employer: TERMINAL CONSTRUCTION CORP**
                    **Grievant: BRIAN MCLAUGHLIN L.U. 4112**
                    **File No.: 2012-308**

## DEMAND FOR ARBITRATION AND NOTICE OF HEARING

**Please be advised** that a grievance or dispute has arisen under the agreement now in effect between the District Council of New York and Vicinity of the United Brotherhood of Carpenters and Joiners of America, AFL-CIO and the Employer named above concerning the following:

**ISSUE:** 50/50 MANNING RATIO

A hearing will be held on:

> **Date:**  May 07, 2014
> **Time:**  9:30 AM
> **Place:** 395 Hudson Street, 9th floor, New York, NY 10014

Pursuant to the terms of the above reference agreement, if you fail to attend the hearing the arbitrator is empowered to issue a default award.

**Please be further advised,** pursuant to Section 7503 (c) of the Civil Practice Law and Rules of the State of New York, that unless within twenty (20) days of service of this notice of intention to proceed to arbitration you apply to stay the arbitration herein, you shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with, and from asserting in court the bar of a limitation of time.

Very truly yours,

Paul Tyznar
Grievance Committee Chair
Dated: April 10, 2014

**<u>SERVICE LIST:</u>**
Via First Class and Certified Mail, Return Receipt Requested:

| | |
|---|---|
| Employer: | TERMINAL CONSTRUCTION CORP |
| | 215 STATE HWY 17 SO |
| | WOOD RIDGE, NJ 07075 |
| | Attn: DONALD N DINALLO-PRES |

Via First Class Mail:        70131090000021564881

| | |
|---|---|
| Arbitration Tribunal: | Roger Maher, Arbitrator |
| | 23 83rd Street |
| | Brooklyn, NY 11209 |

| | |
|---|---|
| Local Union: | DISTRICT COUNCIL |
| | 395 HUDSON STREET, 9 FL. |
| | NEW YORK, NY 10014 |
| | Attn: BRIAN MCLAUGHLIN |

| | |
|---|---|
| Union Counsel: | LYDIA SIGELAKIS |
| | SPIVAK LIPTON LLP |
| | 1700 BROADWAY, 21ST FLOOR |
| | NEW YORK, NY 100 |

212-705-2100

# Grievance

## Part I

Council Rep.: Brian McLaughlin

Signature: _____

Date: 2-2-12

Grievance is brought on behalf of: NYC DCC

UBC #: _____

Signature: _____

Member's Street Address: 395 Hudson St. NY NY NY

Member's Phone #: _____

## Part II
*Employer's Information*

Employers I.D. #: 08355

Employers Name: Terminal ConstructionTelephone #: (201) 939 - 9150

Address: 815 State highway 17 south Woodridge N.J.

Contact Person: Christine m Casimos

Telephone #: (201) 939 - 9150    Employer is: ☐ Independent  ☐ Association Member (specify): Building Contractor Agreement

## Part III
*Nature of Dispute (Check)*

| (Check all that Apply.) | Assoc. of Wall-Ceiling & Carpentry | Building Contractor Assoc. | General Contractors Assoc. | Independent | Inter (specify): AST Describe rules |
|---|---|---|---|---|---|
| **Type 1: 50/50 Manning Ratio** | ☐ Article VII | ☐ Article VII | ☐ Article III, Section 3 | ☐ Article VI, Section 1 | ☐ Article VI_ Section _ |
| **Type 2: Apprentice Ratio** | ☐ Article VI, Section 2(E) | ☐ Article VII, Section 4 | ☐ Article IX, Section 7(G) | ☐ Article VI, Section 3 | ☐ Article _ Section _ |
| **Type 3: Unjust Layoff** | ☐ Article VI, Section 7 | ☐ Article VII, Section 3,5 | ☐ Article III, Section 3 | ☐ Article VI, Section 2 | ☐ Article _ Section _ |
| **Type 4: Failure to Notify Union of Job Start** | ☐ Article XVIII, Section 5 | ☐ Article XVIII, Section 13 | ☐ Article X, Section 2 | ☐ Article XVIII, Section 13 | ☐ Article _ Section _ |
| **Type 5: Wage Issue (see Part V)** | ☐ Article XII | ☐ Article XII | ☐ Article IX, Section 13 | ☐ Article XII | ☐ Article _ Section _ |
| **Type 6: Fringe Benefit Issue** | ☐ Article XVII | ☐ Article XVI | ☐ Article IX, Section 6 | ☐ Article XV | ☐ Article _ Section _ |
| **Type 7: Clothing/Tool Reimbursement** | ☐ Article XVIII, Section 7 | ☐ Article XVIII, Section 22 | ☐ Article IX, Section 7(C) | ☐ Article XVII, Section 22 | ☐ Article _ Section _ |
| **Type 8: Other** | ☐ Article _ Section _ | ☐ Article _ Section _ | ☐ Article _ Section _ | ☐ Article _ Section _ | ☐ Article VIII _ Section 1(a) |

(OVER)

D.C. Job I.D. #: 11-2001272a

Jobsite address: 1 Railroad Ave Ridgefield Cost

Name of Job: Selmos

District of Violation: January 9 date ~ Present  Job Steward Name: Kenneth Rom

Telephone #: (516) 810-0994

Please Print

| Witness Name | Witness UBC # | Local Union | Telephone # |
|---|---|---|---|
| Edward Corley | 6645-3186 | 157 | 917-376-5531 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

State briefly all Facts:

Terminal Construction is doing an alite carp's job. According to the Contract, this is done by checkbilders and Carpenters with a 50/50 ratio. Terminal has had only one stock builder with 8-6 Carpenters on the form used Capping the piles Terminal IS County by man hours cut be no welders in the 50/50 ratio which has doing as we do with the composite crew used below from our work

Part V
Certification
If this Grievance relates to a Wage Claim, this Part V must be signed by the member claiming wages before a notary public.

I, _____, the wage claimant in this Grievance, authorize the District Council to settle this claim on my behalf and certify, under penalties of perjury, that the facts set forth in Part IV above relating to my wage claim are true and correct to the best of my knowledge.

_____

Subscribed before me on this _____ day of _____, 20___

_____

_____

Office Use Only:
Grievance File No: 2012-308

EXHIBIT B

PROJECT LABOR AGREEMENT

FOR THE

HUDSON TRANSMISSION PROJECT
RIDGEFIELD, NEW JERSEY

*BETWEEN*

BERGEN COUNTY
BUILDING & CONSTRUCTION TRADES COUNCIL, AFL-CIO

*AND*

SIEMENS ENERGY, INC.

*DATED*

JANUARY 1, 2012 ~~NOVEMBER ___, 2011~~

–1–

PROJECT LABOR AGREEMENT
COVERING CONSTRUCTION AT
HUDSON TRANSMISSION PROJECT
HVDC CONVERTER STATION
1 RAILROAD AVENUE
RIDGEFIELD, NEW JERSEY

## ARTICLE 1 - PREAMBLE

**WHEREAS,** Siemens Energy, Inc. desires to provide for the efficient, safe, quality, and timely completion of a construction project for the HVDC Converter Station for the Hudson Transmission Project (the "Project") in a manner designed to afford lower costs;

**WHEREAS,** this Project Labor Agreement will foster the achievement of these goals, inter alia, by:

1.    avoiding the costly delays of potential strikes, slowdowns, walkouts, picketing and other disruptions arising from work disputes and promote labor harmony and peace for the duration of the Project;

2.    standardizing the terms and conditions governing the employment of labor on the Project in order to make local rules consistent with National rules;

3.    permitting wide flexibility in work scheduling and shift hours and times from those which otherwise might obtain;

4.    receiving negotiated adjustments as to work rules and staffing requirements from those which otherwise might obtain;

5.    providing comprehensive and standardized mechanisms for the settlement of work disputes, including those relating to jurisdiction;

6.    ensuring a reliable source of skilled and experienced labor;

7.    expediting the construction process; and

**WHEREAS,** the signatory Unions desire the stability, security and work opportunities afforded by a project labor agreement; and the Parties hereto desire to maximize Project safety conditions for both workers and the public.

**NOW, THEREFORE,** the Parties enter into this Agreement:

**SECTION 1.**        **PARTIES TO THE AGREEMENT**

This Project Labor Agreement ("Agreement") is entered into by and between Siemens Energy, Inc. and its successors and assigns (hereinafter referred to as "Principal Contractor"), on its own

behalf as Principal Contractor and its respective contractors and subcontractors   for certain construction work as defined in this Agreement to be performed on the Project and by the Bergen County Building and Construction Trades Council, AFL-CIO (hereafter referred to as "County Council") on behalf of itself and its affiliated local union members, and the signatory Local Unions on behalf of themselves and their members.

## ARTICLE 2 - GENERAL CONDITIONS

### SECTION 1.        DEFINITIONS

Throughout this Agreement, the Union parties and the signatory Local Unions and County Council are referred to singularly and collectively as "Union(s)" where specific reference is made to "Local Unions" that phrase is sometimes used; the term "Contractor(s)" shall include Principal Contractor and all of Principal Contractor's contractors and their subcontractors of whatever tier that are engaged in Construction Work (defined in Article 3, Section 1)on the Project within the scope of this Agreement as defined in Article 3.  Hudson Transmission Partners, LLC is referred to as the "Owner", Siemens Energy, Inc. is referred to as the "Principal Contractor", the Bergen County Building and Construction Trades Council, AFL-CIO is referenced as the "County Council," and the Construction Work covered by this Agreement (as defined in Article 3) is referred to as the "Project." "Vendor" shall mean an entity that supplies merchandise, goods or services to the Project.

### SECTION 2.        CONDITIONS FOR AGREEMENT TO BECOME EFFECTIVE

The Agreement shall not become effective unless each of the following conditions are met: (1) The Agreement is signed by the County Council, and the Local Unions having jurisdiction over the Project work; and (2) The Agreement is signed by Principal Contractor. The Agreement will remain in effect until the Owner has provided Principal Contractor with a notice of Final Completion for the Project.

### SECTION 3.        ENTITIES BOUND & ADMINISTRATION OF AGREEMENT

This Agreement shall be binding on all signatory Unions and shall apply to all Construction Work contracted for by Principal Contractor except as stated in this Agreement. Principal Contractor agrees that neither Principal Contractor, nor any of Principal Contractor's Contractors will contract for or perform any Construction Work for the Project except to a person, firm or corporation who is signatory to the Local Collective Bargaining Agreements attached as Exhibit "A", except as set forth below for specialty construction work. Principal Contractor shall have the right to select any qualified Contractor for the award of contracts or subcontracts on the Project, provided however, that such Contractor of whatever tier will execute a Letter of Assent (attached hereto as Exhibit "B") and comply with the terms of this Agreement and become bound by the local collective bargaining agreements attached hereto as Exhibit "A" (hereafter referred to as "Exhibit "A"). The Collective Bargaining Agreements ("CBA") listed in Exhibit A in effect between the Unions executing this Agreement and Contractors executing the Letter of Assent are applicable to the Construction Work on the Project site as defined in Article 3, except where the provisions of this Agreement may modify such CBAs.  A list of such CBA contracts is

attached hereto as Exhibit "A" and is made a part hereof by this reference. This Agreement shall not govern any Construction Work described in Article 3, Section 2 of this Agreement. Principal Contractor, on behalf of all Contractors, shall administer this Agreement. The applicable Contractor shall notify the County Council by facsimile or email immediately upon the award of project work to a Contractor. Where signatory contractors are unavailable to perform specialty medium and high voltage electrical construction work in a manner acceptable to the Principal Contractor, specialty contractors who are not signatory to a local collective bargaining agreement may sign the Letter of Assent to this Agreement and perform such specialty medium and high voltage electrical construction work in question without becoming bound to the local collective bargaining agreements attached as Exhibit "A". In such an event, the Principal Contractor shall provide notice to the County Council of the selection of a non-signatory contractor to perform such specialty medium and high voltage electrical construction work.

SECTION 4.    **SUPREMACY CLAUSE**

This Agreement, together with the local Collective Bargaining Agreements appended hereto as Exhibit "A" represents the complete understanding of all signatories and supersedes any national agreement, local agreement or other collective bargaining agreement of any type which would otherwise apply to this Project, in whole or in part, except for all work performed under the NTL Articles of Agreement, the National Stack/Chimney Agreement, the National Cooling Tower Agreement, all instrument calibration work and loop checking shall be performed under the terms of the UA/IBEW Joint National Agreement for Instrument and Control Systems Technicians, and the National Agreement of the International Union of Elevator Constructors, with the exception of Article VII, IX and X of this Agreement, which shall apply to such work. Where a subject covered by the provisions, explicit or implicit, of this Agreement is also covered by a CBA attached as Exhibit "A", the provisions of this Agreement shall prevail in the event of a conflict or inconsistency. No practice, understanding or agreement between a Contractor and a Local Union that is not explicitly set forth in this Agreement shall be binding on this Project unless endorsed in writing by the Principal Contractor.

SECTION 5.    **LIABILITY**

The liability of any Contractor and the liability of any Union under this Agreement shall be several and not joint. The Principal Contractor and any Contractor shall not be liable for any violations of this Agreement by any other Contractor; and the County Council and Local Unions shall not be liable for any violations of this Agreement by any other Union.

SECTION 6.    **CONTRACTORS AND SUBCONTRACTORS**

Principal Contractor shall require that the Contractors performing Construction Work within the scope of Article 3, and their subcontractors of whatever tier, become bound by, and signatory to, this Agreement by signing the Letter of Assent attached hereto as Exhibit "B". It is understood that nothing in this Agreement shall be construed as limiting the sole discretion the Principal Contractor in determining which Contractors shall be awarded contracts for Project work. It is further understood that Principal Contractor has sole discretion at any time to terminate, delay or suspend the work, in whole or part, on this Project.

SECTION 7.       AVAILABILITY AND APPLICABILITY TO ALL SUCCESSFUL
                 BIDDERS

The Unions agree that this Agreement will be made available and apply to all Contractors performing Construction Work within the described limits of the Project except as excluded by the terms of this Agreement. This Agreement shall not apply to the work of any Contractor that is performed at any location other than the Project site, as defined in Article 3, Section 1.

## ARTICLE 3 - SCOPE OF THE AGREEMENT

The Construction Work covered by this Agreement shall be as defined and limited by the following sections of this Article.

SECTION 1.       THE CONSTRUCTION WORK

This Agreement will apply only to Construction Work performed on the HVDC converter station site for the Hudson Transmission Project located at 1 Railroad Avenue, Ridgefield, New Jersey (the "Converter Station Site"). The Construction Work will include the construction of an electrical converter station. "Construction Work" shall mean labor customarily performed by the specific crafts in unions affiliated with the Bergen County Building & Construction Trades Council and as specified in applicable collective bargaining agreements attached in Exhibit "A". Construction Work shall not include any of the items of Work set forth in Article 3, Section 2.

The Principal Contractor is permitted to establish one or more off-site areas for delivery, warehousing, parking and staging which will be considered as part of the Converter Station Site at 1 Railroad Avenue, Ridgefield, New Jersey. Deliveries to and from said off-site area will be governed by the Teamsters Local 560 Addendum to this Agreement.

SECTION 2.       EXCLUDED ENTITIES, EMPLOYEES AND WORK

This Agreement shall not apply to any Construction Work to be performed outside the property boundaries of the Converter Station Site, which will encompass the off-site delivery, warehousing, parking and staging area, including, but not limited to, any Construction Work associated with: (i) the laying and connection of high voltage AC transmission cables from the Converter Station Site to the PSE&G Bergen County substation; (ii) the laying and connection of high voltage AC transmission cables from the Converter Station Site to the Hudson River; (iii) the laying and connection of high voltage AC submarine transmission cables within the Hudson River; or (iv) the laying and connection of high voltage AC transmission cables from the Hudson River to the Consolidated Edison 49th Street Substation located in New York, New York.

This Agreement will also not apply to any construction work performed on the Converter Station Site by Prysmian Power Cables and Systems USA, LLC ("Prysmian"), Owner, or any of their respective successors, assigns, affiliates, contractors or subcontractors.

This Agreement also shall not apply to pre-fabrication or pre-assembly of equipment prior to

delivery to the Converter Station Site. Such pre-fabricated or pre-assembled equipment shall include, the equipment identified on Exhibit "C" attached hereto and incorporated by reference. However, this Agreement will apply generally to the rigging, erection and installation of equipment on the Converter Station Site, including parts of works for equipment and systems as specified in Exhibit "C" as directed by the Principal Contractor or Contractors.

The Parties acknowledge that activities relating to the remediation of pre-existing environmental conditions on or around the Converter Station Site are the responsibility of Owner. Owner is not a party to this Agreement and shall not be bound by the terms hereof in conducting such activities.

The following persons are not subject to the provisions of this Agreement, even though performing work on the Project:

.1   Superintendents, supervisors (excluding superintendents, general and forepersons specifically covered by a craft's CBA attached as Exhibit "A"), engineers, inspectors, technology specialists, commissioning engineers and testers (excluding divers specifically covered by a craft's Exhibit "A"), quality control/assurance personnel, timekeepers, mail carriers, clerks, office workers, messengers, guards, non-manual employees, and all professional, engineering, administrative and management persons. Management of the ongoing management operations or maintenance of the constructed facilities;

.2   Employees and entities engaged in off-site handling of materials, equipment or machinery or involved in deliveries to and from the Project site, excepting local deliveries of all major construction materials including fill, ready mix, concrete and cement, asphalt and local deliveries of furniture, fixtures and equipment from any offsite warehouse maintained by Contractor which are covered by this Agreement.

.3   Employees of Principal Contractor, Prysmian or Owner, or their respective affiliates, excepting those performing manual labor for the Construction Work as defined in this Agreement and employees of any State agency, authority or entity, or employees of any municipality or other public employer;

.4   Persons engaged in on-site equipment warranty work;

.5   Persons engaged in geophysical testing (whether land or water) other than boring for core samples;

.6   Any Work of an ancillary nature performed on or near or leading to or onto the Project undertaken by any governmental agency, authority or body; or by railroads or their contractors; and/or by the Bergen County Utilities Authority and parties such as electric utilities, gas utilities, telephone utility companies, and railroads.

.7     Persons engaged in laboratory or specialty testing or inspections;

.8     Building equipment and machinery not used in constructing the facilities that is owned or controlled and/or operated by Owner, Principal Contractor, Prysmian, or their respective affiliates, architects, engineers and/or their respective testing inspection firms;

.9     Off-site maintenance of leased equipment.

The Unions recognize Principal Contractor, Contractors and their Vendors will be actively involved in supervisory roles and in the installation/setup of special technology equipment, checkout, startup, testing, inspection and training on-site, or by telephone, video, audio, computer, of proprietary systems and equipment including signs, graphics and unique project amenities, both interior and exterior to be installed in the Project and in connection with such Construction Work. Principal Contractor, Contractors, and their Vendors and their respective employees will be working in close proximity to union members who will not consider the presence of these employees to be a violation of this Agreement.

The Unions agree to work in harmony with said other employees and not to cause any delays or work stoppages due to the presence of said employees.

The Unions agree that employees or representatives of Principal Contractor, Contractors and their Vendors or manufacturers' representatives train and/or orient their operation employees on equipment, even if the equipment or system has not been formally turned over to them. Individuals performing the tasks as related to the items set forth in this paragraph will notify Principal Contractor and the Contractor's job foreman in the vicinity prior to undertaking such tasks.

The Unions further acknowledge that certain Construction Work involving the erection, installation and testing of critical or specialized components or systems of the HVDC Converter Station , i.e. critical or specialized components or systems of the HVDC Converter Station such as transformers and transformer bushings, thyristor racks, thyristor valve stations, circuit breakers, earthing switches, fiber optic cables, may be performed directly by specialized or factory-trained employees of Principal Contractor, Contractors and their Vendors. In such cases, Principal Contractor, Contractors and their Vendors will have Union craft-persons actively assist in the performance of such Construction Work.   Additionally, the Unions acknowledge that Principal Contractor, Contractors and their Vendors shall have the right to direct craft-persons in a supervisory capacity on the installation of materials, equipment, systems or subsystems as per usual practices in Principal Contractor and its affiliates, Contractors or Vendors country of origin for this type of HVDC converter station.  Employees of Principal Contractor, Contractors and their Vendors may need to make adjustments, specialized installations,  perform system and equipment checks and tests of Construction Work performed by Union craft-persons as necessary to protect the terms of manufacturer's or Vendor's warranties on certain materials or equipment prior to start-up of equipment.  When appropriate, Principal Contractor, Contractor and their Vendors shall allow Union craft-persons to assist with the performance of such specialized work.   The Principal Contractor, Contractors or Vendors shall make the

determination of the point where such specialized work can be performed satisfactorily by and turned over to the Union craft-persons for completion.

**SECTION 3.**          <u>NON-APPLICATION TO CERTAIN ENTITIES</u>

This Agreement shall not apply to the parents, affiliates, subsidiaries, or other joint or sole ventures of any Contractor that do not perform work at this Project. It is agreed, for the purposes of this Agreement only, that this Agreement does not have the effect of creating any joint employment, single employer or <u>alter ego</u> status between Principal Contractor, Owner and any Contractor. As the contracts which comprise the Project work are completed and accepted, the Agreement shall not have further force or effect on such items or areas except where inspections, additions, repairs, modifications, check-out and/or warranty work are assigned in writing (copy of Local Union involved) by Principal Contractor for performance under the terms of this Agreement.

## ARTICLE 4 - UNION RECOGNITION AND EMPLOYMENT

**SECTION 1.**          <u>PRE-HIRE RECOGNITION</u>

Principal Contractor will require all Contractors to recognize the signatory Unions to this Agreement as the sole and exclusive bargaining representatives of all union craft employees who are performing Construction Work on the Project site as defined in Article 3.

**SECTION 2.**          <u>UNION REFERRAL</u>

Contractors contracted by Principal Contractor shall hire employees covered by this Agreement through the job referral systems and hiring halls established in the Local Unions' area Collective Bargaining Agreements (attached as Exhibit "A" to this Agreement). Notwithstanding this, the Contractors shall have sole rights to determine the competency of all referrals; the number of employees required (except with regard to pile driving); the selection of employees to be laid-off (subject to the applicable procedures within the CBA's listed in Exhibit "A" for permanent and/or temporary layoffs and except as provided in Article 5, Section 3); and the sole right to reject any applicant referred by a Local Union, subject to the show-up payments required in the applicable CBA attached as Exhibit "A". In the event that a Local Union is unable to fill any request for qualified employees within a forty eight (48) hour period after such requisition is made by the Contractor (Saturdays, Sundays and holidays excepted), the Contractor may employ qualified applicants from any other available source. In the event that the Local Union does not have a job referral system, the Contractor shall give the Local Union first preference to refer applicants, subject to the other provisions of this Article. The Contractor shall notify the Local Union employees performing construction work hired within its jurisdiction from any source other than referral by the Union.

**SECTION 3.**          <u>NON-DISCRIMINATION IN REFERRALS</u>

The Local Unions represent that their hiring halls and referral systems will be operated in a non-

-8-

discriminatory manner and in full compliance with all applicable federal, state and local laws and regulations which require equal employment opportunities. Referrals shall not be affected in any way by the rules, regulations, bylaws, constitutional provisions or any other aspects or obligations of union membership, policies or requirements and shall be subject to such other conditions as are established in this Article. No employment applicant shall be discriminated against by any referral system or hiring hall because of the applicant's union membership, or lack thereof.

**SECTION 4.**        **CROSS AND QUALIFIED REFERRALS**

The Local Unions shall not knowingly refer to a Contractor as an employee then employed by another Contractor working under this Agreement.  The Local Unions will exert their utmost efforts to recruit sufficient numbers of skilled and qualified crafts employees to fulfill the requirements of the Contractor.

**SECTION 5.**        **MINORITY OR FEMALE APPLICANTS**

In the event that the Local Unions either fail, or are unable, to refer qualified minority or female applicants in percentages required by Owner's commitments to affirmative action goals, Principal Contractor or Contractors may employ qualified minority or female applicants from any other available source. The Contractor shall inform the Unions of the name of any applicant hired from other sources. The Local Unions will cooperate with Contractor requests for minority, women or economically disadvantaged referrals to meet Owner's commitments.

**SECTION 6.**        **AFFIRMATIVE ACTION**

To the extent applicable, the parties hereby agree that each will implement and abide by the requirements of the Owner with regard to affirmative action. Furthermore, Principal Contractor, Contractors and the Unions will comply with such affirmative action plan, including but not limited to: (1) the parties will not discriminate against any employee or applicant for employment because of age, race, creed, color, national origin, ancestry, marital status, sex or any other protected category used by government regulation; (2) the parties will endeavor to include in any solicitations or advertisements for employees or subcontractors, a notice that all qualified applicants will receive consideration for employment, and contractors and subcontractors for work, without regard to age, race, creed, color, national origin, ancestry, marital status, sex or any other protected category used by government regulation; and (3) the parties agree to utilize the best efforts to ensure that minority business enterprises and women-owned business enterprises shall have the maximum practicable opportunity to provide Construction Work under this Agreement.

**SECTION 7.**        **UNION DUES**

All employees covered by this Agreement shall be subject to the union security provisions contained in the applicable Exhibit "A" local agreements, as amended from time to time, but only for the period of time during which they are performing Construction work and only to the extent of rendering payment of the applicable union dues and assessments uniformly required for

union membership in the Local Union, signatory to this Agreement, which represents the craft in which the employee is performing Construction work. No employee shall be discriminated against at the Project site because of the employee's union membership or lack thereof. In the case of unaffiliated employees, the Unions will receive the dues payment as a working assessment fee.

SECTION 8.        CRAFT FOREPERSONS AND GENERAL FOREPERSONS

The selection of craft forepersons and/or general forepersons and the number of forepersons required shall be solely the responsibility of the Contractor, except where otherwise provided by specific provisions of an applicable collective bargaining agreement listed in Exhibit "A". All forepersons shall take orders exclusively from the designated Contractor representatives or technology specialists. Craft forepersons shall be designated as working forepersons at the request of the Contractor, except when an existing local Collective Bargaining Agreement prohibits a foreperson from working when the craft persons he is leading exceed a specified number.

**ARTICLE 5 - UNION REPRESENTATION**

SECTION 1.        UNION REPRESENTATIVES

Each Local Union representing on-site Project employees shall be entitled to designate in writing (with a copy to the Principal Contractor and any Contractor involved) representatives, including the Business Manger of the Local Union, who shall be afforded access to the Project provided they do not interfere with the work of employees and further provided that such representatives shall fully comply with the safety rules of the Project.

SECTION 2.        STEWARDS

.1        Each Local Union shall have the right to designate a working journeyperson as a Steward and an alternate, and shall notify Principal Contractor and Contractors of the identity of the designated Steward (and alternate) prior to the assumption of such duties. Stewards shall not exercise supervisory functions and will receive the regular rate of pay for their craft classifications. There will be no non-working Stewards on the Project.

.2        In addition to their work as an employee, the Steward shall have the right to receive complaints or grievances and to discuss and assist in their adjustment with the Contractor's appropriate supervisor. Each Steward shall be concerned with the employees of the Steward's Contractor and, if applicable, subcontractors of that Contractor, but not with the employees of any other Contractor. The Contractor will not discriminate against the Steward in the proper performance of Union duties.

.3        The Stewards shall not have the right to determine when overtime shall be worked, or who shall work overtime, except pursuant to the Exhibit "A" provision providing

– 10 –

procedures for the equitable distribution of overtime.

SECTION 3.      LAYOFF OF A STEWARD

Contractors agree to notify the appropriate Union twenty four (24) hours prior to the layoff of a Steward, except in cases of discipline or discharge for just cause. If a Steward is protected against layoff by a Collective Bargaining Agreement listed in Exhibit "A", such provisions shall be recognized to the extent the Steward possesses the necessary qualifications to perform the construction work required. In any case in which a Steward is discharged or disciplined for just cause, the Contractor shall immediately notify the Steward's Local Union.

## ARTICLE 6 - MANAGEMENT'S RIGHTS

SECTION 1.      RESERVATION OF RIGHTS

Except as expressly limited by a specific provision of this Agreement, Principal Contractor and all Contractors shall retain full and exclusive authority for the management of the construction work and operations, including but not limited to (1) the right to direct the work force, including determination as to the number to be hired and the qualifications thereof; the promotion, transfer, layoff of its employees; or (2) the discipline or discharge for just cause of its employees; (3) the assignment and schedule of construction work; (4) the promulgation of reasonable Project work rules, which must be supplied to the Union ten (10) days before posting; and (5) the requirement, timing and number of employees to be utilized for overtime work. No rules, customs, or practices that limit or restrict productivity or efficiency of the individual, as determined by the Principal Contractor or Contractor, and/or joint working efforts with other employees shall be permitted or observed.

SECTION 2.      MATERIALS, METHODS & EQUIPMENT

Subject to the terms and conditions of the local Collective Bargaining Agreements appended hereto as Exhibit "A", there shall be no limitation or restriction upon the Contractors' choice of materials, techniques, methods, standards, technology or design, or, regardless of source or location, upon the use and installation of equipment, machinery, package units, pre-case, pre-fabricated, pre-finished, or pre-assembled materials, tools, or other labor-saving devices. Contractors may, without restriction, install or use materials, supplies or equipment regardless of their source, unless otherwise addressed in Exhibit "A". The on-site installation or application of such items shall be performed either by the by the craft having jurisdiction over such work or in case and as needed by the Contractor's technology specialists. It is recognized that special technology equipment might have to be installed according to specific industry standards and to the instructions of the assigned technology specialists in order to guarantee the warranty obligations of the respective suppliers.   It is further recognized that other personnel having special qualifications may participate in the check-off or testing of specialized or unusual equipment or facilities as designated by the Contractor.

There shall be no restrictions as to work that is performed off-site for the Project, except for offsite work done in a fabrication center, tool yard, or batch plant dedicated exclusively to the

– 11 –

performance of work on the Project, and located adjacent to the "site of work".

## ARTICLE 7 – WORK STOPPAGES AND LOCKOUTS

**SECTION 1.**          **NO STRIKES / NO LOCK OUT**

The Unions agree that there shall be no strikes, sympathy strikes, picketing, work stoppages, slowdowns, hand billing, demonstrations or other disruptive activity of any kind at the Project for any reason by any Union or employee against any Contractor or employer while performing construction work at the Project. There shall be no Union activity, concerted or otherwise, or union employee activity which stops, disrupts or interferes with the free flow of traffic in the area of Owner's property. Principal Contractor and Contractors will not lock out or shut down the Project because of a strike on any other project within the jurisdiction of the County Council unless there is breach of this Agreement. Principal Contractor or Owner may stop work on or shut down the Project for valid legal or business reasons. Failure of any Union or employee to cross any picket line established by any union, signatory or non-signatory to this Agreement, or the picket or demonstration line of any other organization, at or in proximity to the Project site is a violation of this Article. There shall be no lockout at the Project by any signatory Contractor. Contractors and Unions shall take all steps necessary to ensure compliance with this Section 1 and to ensure uninterrupted construction and the free flow of traffic in the project area for the duration of this Agreement.

**SECTION 2.**          **DISCHARGE FOR VIOLATION**

A Contractor may discharge any employee violating Section 1, above, and any such employee will not be eligible thereafter for referral under this Agreement.

**SECTION 3.**          **NOTIFICATION**

If a Contractor contends that any Union has violated this Article, it will notify the appropriate person at the district or area council of the Local Union involved advising of such fact, with copies of the notification to the Local Union and the County Council. The district or area council, and the County Council shall each instruct, order and otherwise use their best efforts to cause the employees and/or the Local Unions to immediately cease and desist from any violation of this Article. A district or area council, or the County Council complying with these obligations shall not be liable for the unauthorized acts of a Local Union or its members.

**SECTION 4.**          **EXPEDITED ARBITRATION**

Any Contractor or Union alleging a violation of Section 1 of this Article may utilize the expedited procedure set forth below (in lieu of, or in addition to, any actions at law or equity) that may be brought.

.1          A party invoking this procedure shall notify J.J. Pierson, Jr., Esq. at 51 JFK Parkway, First Floor West, Short Hills , New Jersey 07078, telephone number (973) 359-8100, fax number (973) 359-8161, who shall serve as Arbitrator under this expedited arbitration

-- 12 --

procedure. In the event that J.J. Pierson is unable to serve, a party invoking this procedure shall notify Wellington Davis, who shall serve as arbitrator under this expedited procedure. Copies of such notification will be simultaneously sent to the alleged violator and, if a Local Union is alleged to be in violation, it's International, the County Council, and Principal Contractor.

.2    The Arbitrator shall thereupon, after notice as to time and place to the Contractor, the Local Union involved, the County Council and Principal Contractor, hold a hearing within forty eight (48) hours of receipt of the notice invoking the procedure if it is contended that the violation still exists. The hearing will not, however, be scheduled for less than twenty four (24) hours after the notice to the district or area council required by Section 3, above.

.3    All notices pursuant to this Article may be by telephone, telegraph, hand delivery, or fax, confirmed by overnight delivery, to the arbitrator, Contractor or Union involved. The hearing may be held on any day including Saturdays or Sundays. The hearing shall be completed in one (1) session, which shall not exceed eight (8) hours duration (no more than four (4) hours being allowed to either side to present their case, and conduct their cross-examination) unless otherwise agreed. A failure of any Union or Contractor to attend the hearing shall not delay the hearing of evidence by those present or the issuance of an award by the Arbitrator. Hearings shall be held at the jobsite or at the Newark office of the New Jersey State Board of Mediation, as directed by the Arbitrator.

.4    The sole issue at the hearing shall be whether a violation of Section 1 (above) occurred. If a violation is found to have occurred, the Arbitrator shall issue a Cease and Desist Award restraining such violation and serve copies on the Contractor and Union involved. The Arbitrator shall have no authority to consider any matter in justification, explanation or mitigation of such violation or to award damages, which issue is reserved solely for court proceedings, if any. The Award shall be issued in writing within three (3) hours after the close of the hearing, and may be issued without an Opinion. If any involved party desires an Opinion, one shall be issued within fifteen (15) calendar days, but its issuance shall not delay compliance with, or enforcement of, the Award.

.5    An award issued under this procedure may be enforced by any court of competent jurisdiction upon the filing of this Agreement together with the Award. Notice of the filing of such enforcement proceedings shall be given to the Union or Contractor involved. In any court proceeding to obtain a temporary or preliminary order enforcing the arbitrator's Award as issued under this expedited procedure, the involved Union and Contractor waive their right to a hearing and agree that such proceedings may be ex parte, provided notice is given to opposing counsel. Such agreement does not waive any party's right to participate in a hearing for a final court order of enforcement or in any contempt proceeding.

.6    Any rights created by statute or law governing arbitration proceedings which are inconsistent with the procedure set forth in this Article, or which interfere with compliance thereto, are hereby waived by the Contractors and Unions to whom they

– 13 –

accrue.

.7      The fees and expenses of the Arbitrator shall be equally divided between the involved Contractor and Union.

SECTION 5.      <u>ARBITRATION OF DISCHARGES FOR VIOLATION</u>

Procedures contained in Article 9 shall not be applicable to any alleged violation of this Article, with the single exception that an employee discharged for violation of Section 1 (above) may have recourse to the procedures of Article 9 to determine only if the employee did, in fact, violate the provisions of Section 1 of this Article; but not for the purpose of modifying the discipline imposed where a violation is found to have occurred.

<u>ARTICLE 8 - LOCAL ADMINISTRATIVE COMMITTEE (LAC)</u>

SECTION 1.      <u>MEETINGS</u>

The Local Administrative Committee (LAC) will meet on a regular basis to (1) implement and oversee the Agreement procedures and initiatives; (2) monitor the effectiveness of the Agreement; and (3) identify opportunities to improve efficiency and work execution.

SECTION 2.      <u>COMPOSITION</u>

The LAC will be co-chaired by the President of the Bergen County Building and Construction Trades Council and a designated representative of Principal Contractor. It will be comprised of representatives of the local unions signatory to the project labor agreement and representatives of Principal Contractor and other contractors on the project.

<u>ARTICLE 9 - GRIEVANCE & ARBITRATION PROCEDURE</u>

SECTION 1.      <u>PROCEDURE FOR RESOLUTION OF GRIEVANCES</u>

Any question, dispute or claim arising out of, or involving the interpretation or application of this Agreement (other than jurisdictional disputes or alleged violations of Article 7, Section 1) shall be considered a grievance and shall be resolved pursuant to the exclusive procedure of the steps described below; provided, in all cases, that the question, dispute or claim arose during the term of this Agreement.

STEP 1:

When any employee covered by this Agreement feels aggrieved by a claimed violation of this Agreement, the employee shall, through the Local Union business representative or job steward, give notice of the claimed violation to the work site representative of the involved Contractor. To be timely, such notice of the grievance must be given within five (5) working days after the act, occurrence or event giving rise to the grievance. The business representative of the Local Union or the job steward and the work site

representative of the involved Contractor shall meet and endeavor to adjust the matter within five (5) working days after timely notice has been given. If they fail to resolve the matter within the prescribed period, the grieving party may, within five (5) working days thereafter, pursue Step 2 of the grievance procedure by serving the involved Contractor and Principal Contractor with written copies of the grievance setting forth a description of the claimed violation, the date of which the grievance occurred, and the provisions of the Agreement alleged to have been violated. Grievances and disputes settled at Step 1 are non-precedential, except as to the specific Local Union, employee and Contractor directly involved, unless the settlement is accepted in writing by Principal Contractor as creating a precedent. Should any signatory to this Agreement have a dispute (excepting jurisdictional disputes or alleged violations of Article 7, Section 1) with any other signatory to this Agreement, and if after conferring, a settlement is not reached within five (5) working days, the dispute shall be reduced to writing and proceed to Step 2 in the same manner as outlined in the section for the adjustment of employee grievances.

**STEP 2:**

The Business Manager or designee of the involved Local Union, together with the designated representatives of the Council President, the involved Contractor, and the designated representative of Principal Contractor shall meet in Step 2 within five (5) working days of service of the written grievance to arrive at a satisfactory settlement. Any resolution reached between the designee of Principal Contractor and the Council President shall be binding on the parties to the dispute.

**STEP 3:**

.1      If the grievance shall have been submitted but not resolved in Step 2, any of the participating Step 2 entities may, within fourteen (14) calendar days after the initial Step 2 meeting, submit the grievance in writing (copies to other participants to the next available arbitrator of the panel of arbitrators consisting of J.J. Pierson Jr., Esq., Gary Kendellen and Wellington Davis, who shall act as the Arbitrator under this procedure. The Labor Arbitration Rules of the American Arbitration Association shall govern the conduct of the arbitration hearing, at which all Step 2 participants shall be parties. The decision of the Arbitrator shall be final and binding on the involved Contractor, Local Union and employees, and the fees and expenses of such arbitrations shall be borne equally by the involved Contractor and Local Union.

.2      Failure of the grieving party to adhere to the time limits set forth in this Article shall render the grievance null and void. These time limits may be extended only by written consent of Principal Contractor, involved Contractor, and involved Local Union at the particular step where the extension is agreed. The Arbitrator shall have authority to make decisions only on the issues presented to it and shall not have the authority to change, add to, delete or modify any provision of this Agreement.

.3    Hearings shall be held at the jobsite in the offices of Principal Contractor or at the Newark office of the New Jersey State Board of Mediation, as directed by the Arbitrator.

SECTION 2.    **LIMITATION AS TO RETROACTIVITY**

No arbitration decision or award may provide retroactivity of any kind exceeding sixty (60) calendar days prior to the date of service of the written grievance on Principal Contractor and the involved Contractor or Local union.

SECTION 3.    **PARTICIPATION BY PRINCIPAL CONTRACTOR**

Principal Contractor shall be notified by the involved Contractor and Union of all actions under this Article, and at its election, may participate in full in all proceedings at these Steps, including Step 3 arbitration.

**ARTICLE 10 - JURISDICTIONAL DISPUTES**

SECTION 1.    **NO DISRUPTIONS**

There will be no strike, sympathy strike, jurisdictional strike, recognition strike, slowdown, sabotage, "work to rule," sickout, sit-down, picketing of any type (including informational picketing), hand billing, boycott, interruption of work or any disruptive activity that interferes with or interrupts in any way, work on the Project by the Unions and their members arising out of, or because of, any jurisdictional dispute. Pending the resolution of the dispute, the work shall continue uninterrupted and as assigned by the Contractor. No jurisdictional dispute shall excuse a violation of Article 7.

SECTION 2.    **ASSIGNMENT**

A.    There shall be a mandatory pre-job markup / assignment meeting prior to the commencement of any main work portion e.g. civil, mechanical, electrical. Attending such meeting shall be designated representatives of the Union signatories to this Agreement, the Principal Contractor, and the involved Contractors. Reasonable efforts will be made to schedule the pre-job meeting in a timely manner prior to the start of Construction Work.

B.    All Project construction work assignments shall be made by the Contractor according criteria set forth in Section 3, Subsection D 1-3.

C.    When a Contractor has made an assignment of work, he shall continue the assignment without alteration unless otherwise directed by an arbitrator or there is agreement between the National and International Unions involved. Claims of a change of original assignment shall be processed in accordance with Article I of the Procedural Rules of the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry ("the Plan").

D. In the event that a Union involved in the change of original assignment dispute is an affiliate of a National or International Union that is not affiliated with the Building and

Construction Trades Department and does not wish to process a case through the Plan, the parties shall mutually select one of the following Arbitrators: Arbitrator J.J. Pierson, Arbitrator Paul Greenberg or Arbitrator Walter Kardy and submit the dispute directly to the Arbitrator. The selected Arbitrator shall determine whether the case requires a hearing or may be decided upon written submissions. In rendering his determination on whether there has been a change of original assignment, the Arbitrator shall be governed by the following:

       1.     The contractor who has the responsibility for the performance and installation shall make a specific assignment of the work which is included in his contract to a particular union(s). For instance, if contractor A subcontracts certain work to contractor B, then contractor B shall have the responsibility for making the specific assignments for the work included in his contract. If contractor B, in turn, shall subcontract certain work to contractor C, then contractor C shall have the responsibility for making the specific assignment for the work included in his contract. After work has been so assigned, such assignment will be maintained even though the assigning contractor is replaced and such work is subcontracted to another contractor. It is a violation of the Agreement for the contractor to hold up disputed work or shut down a project because of a jurisdictional dispute.

       2.     When a contractor has made an assignment of work, he shall continue the assignment without alteration unless otherwise directed by an arbitrator or there is agreement between the National or International Unions involved.

       a.     Unloading and/or handling of materials to stockpile or storage by a trade for the convenience of the responsible contractor when his employees are not on the job site, or in an emergency situation, shall not be considered to be an original assignment to that trade.

       b.     Starting of work by a trade without a specific assignment by an authorized representative of the responsible contractor shall not be considered an original assignment to that trade, provided that the responsible contractor, or his authorized representative, promptly, and, in any event, within eight working hours following the start of work, takes positive steps to stop further unauthorized performance of the work by that trade.

**SECTION 3.**     **PROCEDURE FOR SETTLEMENT OF DISPUTES**

    A.    Any Union having a jurisdictional dispute with respect to Project work assigned to another Union will submit through its International the dispute in writing to the Administrator of the Plan within 72 hours and send a copy of the letter to the other Union involved, the Contractor involved, the General Contractor, the BTC, and the district or area councils of the unions involved. Upon receipt of a dispute letter from any Union, the Administrator will invoke the procedures set forth in the Plan to resolve the jurisdictional dispute. The jurisdictional dispute letter shall contain the information described in Article IV of the Procedural Rules of the Plan.

    B.    Within 5 calendar days of receipt of the dispute letter, there shall be a meeting of the General Contractor, the Contractor involved, the Local Unions involved and designees of the BTC and the district or area councils of the Local Unions involved for the purpose of resolving the jurisdictional dispute.

    C.    In order to expedite the resolution of jurisdictional disputes, the parties have agreed in advance to mutually select one of the following designated Arbitrators: Arbitrator J.J. Pierson, Arbitrator Paul Greenberg or Arbitrator Walter Kardy to hear all unresolved jurisdictional disputes arising under this Agreement. All other rules and procedures of the Plan

– 17 –

shall be followed. If none of the three Arbitrators is available to hear the dispute within the time limits of the Plan, the Plan's arbitrator selection process shall be utilized to select another arbitrator.

    D.    In the event that a Union involved in the dispute is an affiliate of a National or International Union that is not affiliated with the Building and Construction Trades Department and does not wish to process a case through the Plan as described in paragraphs A-C above, the parties to the dispute shall mutually select one of the following Arbitrators: Arbitrator J. J. Pierson, Arbitrator Paul Greenberg or Arbitrator Walter Kardy to hear the dispute and shall submit the dispute directly to the selected arbitrator. The time limits for submission and processing disputes shall be the same as provided elsewhere in this Section. The selected Arbitrator shall schedule the hearing within seven business days from the date of submission. If he cannot hear the case within the required timeframe, one of the other Arbitrators will be selected to hear the case unless all parties to the dispute agree to waive the seven day time limit. In rendering his decision, the Arbitrator shall determine:

    1.    First whether a previous agreement of record or applicable agreement, including a disclaimer agreement, between the National and International Unions to the dispute governs;

    2.    Only if the Arbitrator finds that the dispute is not covered by an appropriate or applicable agreement of record or agreement between the crafts to the dispute, he shall then consider the established trade practice in the industry and prevailing practice in the locality. Where there is a previous decision of record governing the case, the Arbitrator shall give equal weight to such decision of record, unless the prevailing practice in the locality in the past ten years favors one craft. In that case, the Arbitrator shall base his decision on the prevailing practice in the locality. Except, that if the Arbitrator finds that a craft has improperly obtained the prevailing practice in the locality through raiding, the undercutting of wages or by the use of vertical agreements, the Arbitrator shall rely on the decision of record and established trade practice in the industry rather than the prevailing practice in the locality.

    3.    Only if none of the above criteria is found to exist, the Arbitrator shall then consider that because efficiency, cost or continuity and good management are essential to the well being of the industry, the interests of the consumer or the past practices of the employer shall not be ignored.

    The Arbitrator shall set forth the basis for his decision and shall explain his findings regarding the applicability of the above criteria. If lower-ranked criteria are relied upon, the Arbitrator shall explain why the higher-ranked criteria were not deemed applicable. The Arbitrator's decision shall only apply to the job in dispute.

    Each party to the arbitration shall bear its own expense for the arbitration and agrees that the fees and expenses of the Arbitrator shall be borne by the losing party or parties as determined by the Arbitrator.

    E.    The Arbitrator shall render a short-form decision within 5 days of the hearing based upon the evidence submitted at the hearing, with a written decision to follow within 30 days of the close of hearing.

    F.    This Jurisdictional Dispute Resolution Procedure will only apply to work performed by Local Unions that represent workers employed on the Project.

    G.    Any Local Union involved in a jurisdictional dispute on this Project shall continue working in accordance with Section 2 above and without disruption of any kind.

SECTION 4.       AWARD

        Any award rendered pursuant to this Article and the Plan shall be final and binding on the disputing Local Unions and the involved Constructor on this Project only and may be enforced in accordance with the provisions of Article VII of the Plan. Any award rendered pursuant to the alternate procedures of this Article shall be final and binding on the disputing Local Unions and the involved Contractor on this Project only, and may be enforced in any court of competent jurisdiction. Such award or resolution shall not establish a precedent on any other construction work not covered by this Agreement. In all disputes under this Article, the General Contractor and the involved Contractors shall be considered parties in interest.

SECTION 5.       LIMITATIONS

        The Arbitrator shall have no authority to assign work to a double crew, that is, to more employees than the minimum required by the Contractor to perform the work involved; nor to assign work to employees who are not qualified to perform the work involved; nor to assign work being performed by non-union employees to union employees. This does not prohibit the establishment, with the agreement of the involved Contractor, of composite crews where more than 1 employee is needed for the job. The aforesaid determinations shall decide only to whom the disputed work belongs.

SECTION 6.       NO INTERFERENCE WITH WORK

        A.       There shall be no interference or interruption of any kind with the work of the Project while any jurisdictional dispute is being resolved. The work shall proceed as assigned by the Contractor until finally resolved under the applicable procedure of this Article. The award shall be confirmed in writing to the involved parties. There shall be no strike, work stoppage or interruption in protest of any such award. Any claims of a violation of this section shall be submitted and processed in accordance with the impediment to job progress provisions of the Plan.

        B.       In the event a Union alleged to have engaged in an impediment to job progress is an affiliate of a National or International Union that is not affiliated with the Building and Construction Trades Department and does not wish to have the impediment to job progress charge processed through the Plan, the parties to the dispute shall mutually select one of the three Arbitrators designated in this Article to hear the dispute. The selected Arbitrator shall schedule the hearing within two business days from the date of submission. If he cannot hear the case within the required timeframe, one of the other Arbitrators shall be selected by the parties to hear the case unless all parties to the dispute agree to waive the two day time limit. The sole issue at the hearing shall be whether or not a violation of this Section has in fact occurred, and the Arbitrator shall have no authority to consider any matter in justification, explanation or mitigation of such violation or to award damages. The Arbitrator's decision shall be issued in writing within 3 hours after the close of the hearing, and may be issued without an opinion. If any party desires an opinion, one shall be issued within 15 days, but its issuance shall not delay compliance with, or enforcement of, the decision. The Arbitrator may order cessation of the violation of this Section and other appropriate relief, and such decision shall be served on all parties by facsimile upon issuance. Each party to the arbitration shall bear its own expense for the arbitration and agrees that the fees and expenses of the Arbitrator shall be borne by the losing

party or parties as determined by the Arbitrator.

## ARTICLE 11 – WAGES AND BENEFITS

**SECTION 1.**      **CLASSIFICATION AND BASE HOURLY RATE**

All employees covered by this Agreement shall be classified in accordance with the work performed and paid the base hourly wage rates for those classifications as specified in the attached collective bargaining agreements listed in Exhibit "A", as amended during this Agreement. Recognizing, however, that special conditions may exist or occur on the Project, the parties, by mutual agreement may establish rates and/or hours for one or more classifications which may differ from the CBA's listed in Exhibit "A". Parties to such agreements shall be Principal Contractor, the Contractor involved, the involved Local Unions and the Council.

**SECTION 2.**      **TRUST FUNDS**

.1      The Contractors agree to pay contributions to the established funds in the amounts designated in the appropriate CBA's listed in Exhibit "A". Jointly, trustee fringe benefit plans established or negotiated through collective bargaining during the life of this Agreement may be added.

.2      The Contractor agrees to be bound by the written terms of the legally established Trust Agreements specifying the detailed basis on which payments are to be paid into, and benefits paid out of, such Trust Funds but only with regard to work done on this Project and only for those employees to whom this Agreement requires such benefits Payments.

.3      Should any Contractor become delinquent in the payment of fringe benefits as required by this agreement, it is agreed that Principal Contractor will be notified in writing by authorized representatives of the involved union via certified mail of the specific documented details of such delinquencies. If, within fifteen (15) days from receipt of such certified mail notice, the delinquency has not been paid, Principal Contractor agrees to withhold from outstanding monies due an alleged delinquent Contractor / Subcontractor the amount claimed. The amount owed will be paid by Principal Contractor within fourteen (14) days after receipt of an arbitration award or order of a court of competent jurisdiction by the union, if not paid prior to said date by the delinquent Contractor / Subcontractor.

## ARTICLE 12 – HOURS OF WORK, PREMIUM PAYMENTS, SHIFTS AND HOLIDAYS

**SECTION 1.**      **WORK WEEK AND WORK DAY**

.1      The standard workweek shall consist of forty (40) hours of work at straight time rates per the following schedule:

- One (1) -- Five (5) Day Work Week is Monday – Friday (five days), eight (8) hours

per day, plus 1/2 hour unpaid lunch period each day.

.2    The standard work day shall consist of eight (8) hours of work between 7:00 a.m. and 5:00 p.m., exclusive of a thirty (30) minute unpaid lunch period. Starting and quitting times shall occur at the employees' place of work as may be designated by the Contractor. The Contractor shall designate the starting and quitting time for all employees. Any starting time put in effect on Monday shall remain in effect for the entire workweek, unless a change is mutually agreed upon between Principal Contractor and the Union. Changes in starting times must be scheduled with not less than five (5) work days notice to the Local Union.

.3    Contractors shall provide not less than five (5) days prior notice to the Local Union involved as to the work hour schedules to be worked or such lesser notice as may be mutually agreed upon.

**SECTION 2.**    **OVERTIME**

Overtime pay for hours outside of the standard work week and work day, described in Section 1 above, shall be paid in accordance with the applicable CBA's in Exhibit "A". There will be no restriction upon the Contractor's scheduling of overtime or the non-discriminatory designation of employees who shall be worked. There shall be no pyramiding or stacking of overtime pay under any circumstances. The Contractor shall have the right to schedule work so as to minimize overtime.

**SECTION 3.**    **SHIFTS**

.1    <u>Flexible Schedules</u> - Scheduling of shift work shall remain flexible in order to meet Project schedules and existing Project conditions including the minimization of interference with traffic. It is not necessary to work a day shift in order to schedule a second shift. Shifts must be worked a minimum of five (5) consecutive work days, must have prior approval of Principal Contractor, and must be scheduled with not less than five (5) work days notice to the Local Union.

.2    <u>Second/Shift</u> - The second shift shall be in accordance with the applicable Collective Bargaining Agreements listed in Exhibit "A", and shall be exclusive of a 1/2 hour unpaid lunch period.

.3    <u>Third/Shift</u> - The third shift shall be in accordance with the applicable Collective Bargaining Agreements listed in Exhibit "A", and shall be exclusive of a 1/2 hour unpaid lunch period.

.4    <u>Ten Hour Shifts</u> – Four (4) ten (10) hour shifts, if needed, shall be implemented in accordance with the applicable Collective Bargaining Agreements listed in Exhibit "A", and shall be exclusive of a 1/2 hour unpaid lunch period.

.5    <u>Flexible Starting Times</u> - Shift starting times will be adjusted by the Contractor as

– 21 –

necessary to fulfill Project requirements subject to the notice requirements of paragraph 1.

.6   It is agreed that when project circumstances require a deviation from the above shifts, the involved union's contractors and Principal Contractor shall adjust the starting times of the above shifts or establish shifts that meet the project requirements. It is agreed that neither party will unreasonably withhold their agreement.

**SECTION 4.**    **HOLIDAYS**

.1   The recognized holidays on the Project shall be as follows:

| | |
|---|---|
| New Years Day | Labor Day |
| Presidents Day | Veterans Day |
| Memorial Day | Thanksgiving Day |
| Fourth of July | Christmas Day |
| Presidential Election Day | |

* Good Friday shall be observed in accordance with the applicable Exhibit "A".

All said holidays shall be observed on the dates designated by New Jersey state law.  In the absence of such designation, they shall be observed on the calendar date except those holidays which occur on Sunday shall be observed on the following Monday.

.2   Payment – Regular holiday pay, if any, and/or premium pay for work performed on such a recognized holiday shall be in accordance with the applicable CBA listed in Exhibit "A".

.3   Exclusivity – No holidays other than those listed in Section 4, paragraph 1 above shall be recognized or observed.

**SECTION 5.**    **REPORTING PAY**

.1   Employees who report to the work location pursuant to the regular schedule of hours in the applicable CBA listed in Exhibit "A" and who are not provided with work or whose work is terminated early by a Contractor for whatever reason, shall receive minimum reporting pay in accordance with the applicable CBA listed in Exhibit "A".

.2   When an employee, who has completed their scheduled shift and left the Project site, is "called out" to perform special work of a casual, incidental or irregular nature, the employee shall receive pay for actual hours worked with a minimum guarantee, as may be required by the applicable CBA listed in Exhibit "A".

.3   When an employee leaves the job or work location of their own volition or is discharged for cause or is not working as a result of the Contractor's invocation of Section 7 below, they shall be paid only for the actual time worked.

.4    Except as specifically set forth in this Article, there shall be no premiums, bonuses, hazardous duty, high time or other special payments of any kind.

.5    There shall be no pay for time not actually worked except as specifically set forth in this Article and except where an applicable Exhibit "A" requires a full week's pay for forepersons. Travel expenses set forth in the CBA's listed in Exhibit "A" shall be limited to $6.00 per day.

**SECTION 6.**    **PAYMENT OF WAGES**

.1    Payment shall be made by check, drawn on a New Jersey bank with branches located within commuting distance of the job site. Paychecks shall be issued by the Contractor at the job site pursuant to the applicable CBA listed in Exhibit "A". In the event that the following Friday is a bank holiday, paychecks shall be issued on Wednesday of that week. Not more than three (3) days wages shall be held back in any pay period. Paycheck stubs shall contain the name and business address of the Contractor, together with an itemization of deductions from gross wages. Employees of a Contractor or Subcontractor may sign up for direct deposit of their paychecks into any bank they choose.

.2    Employees who are laid off or discharged for cause shall be paid in full for that which is due them at the time of termination. The Contractors shall also provide the employee with a written statement setting forth the date of layoff or discharge.

**SECTION 7.**    **EMERGENCY WORK SUSPENSION**

Contractor may, if considered necessary for the protection of life and/or safety of employees or others, suspend all or a portion of Project Work. In such instances, employees will be paid for actual time worked, provided however, that when a Contractor requests that employees remain at the job site available for work, employees will be paid for "stand-by" time at their hourly rate of pay.

**SECTION 8.**    **INJURY/DISABILITY**

An employee who, after commencing work, suffers a work-related injury or disability while performing work duties shall receive no less than eight (8) hours wages for that day. Further, the employee shall be rehired at such time as able to return to duties provided there is still work available on the Project for which the employee is qualified and able to perform.

**SECTION 9.**    **TIME KEEPING**

Contractor may utilize brassing or other systems to check employees in and out. Each employee must check in and out. The Contractor will provide adequate facilities for checking in and out in an expeditious manner.

**SECTION 10.**    **MEAL PERIOD**

Contractor shall schedule an unpaid period of not more than 1/2 hour duration at the work location between the 3rd and 5th hour of the scheduled shift. A Contractor may, for efficiency of operation, establish a schedule that coordinates the meal periods of two (2) or more crafts. If an employee is required to work through the meal period, the employee shall be compensated in a manner established in the applicable collective bargaining agreement listed in Exhibit "A".

**SECTION 11.**      **BREAK PERIODS**

There will be no rest periods, organized coffee breaks or other non-working time established during working hours. Individual coffee containers will be permitted at the employee's work location. Local area practice will prevail for coffee breaks that are not organized.

**ARTICLE 13 - APPRENTICES**

**SECTION 1.**      **RATIOS**

Recognizing the need to maintain continuing supportive programs designed to develop adequate numbers of competent workers in the construction industry and to provide craft entry opportunities for minorities, women and economically disadvantaged non-minority males, Contractors will employ apprentices in their respective crafts to perform such work as is within their capabilities and which is customarily performed by the craft in which they are indentured. Contractors may utilize apprentices and such other appropriate classifications as are contained in the applicable Exhibit "A" in a ratio not-to-exceed a ratio of one (1) apprentice to four (4) journeymen or the ratio provided in the applicable Exhibit "A", whichever is greater. Apprentices and such other classifications as are appropriate shall be employed in a manner consistent with the provisions of the appropriate Collective Bargaining Agreement listed in Exhibit "A".

**SECTION 1.**      **HELMETS TO HARDHATS**

The Contractors and the Unions recognize a desire to facilitate the entry into the building and construction trades of veterans who are interested in careers in the building and construction industry.  The Contractors and Unions agree to use reasonable efforts to utilize the services of the Center for Military recruitment, Assessment and Veterans Employment (hereinafter "Center") and the Center's "Helmets to Hardhats" program to serve as a resource for preliminary orientation, assessment of construction aptitude, referral to apprenticeship programs or hiring halls, counseling and mentoring, support network, employment opportunities and other needs as identified by the parties.

The Unions and Contractors agree to use reasonable efforts to coordinate with the Center to create and maintain an integrated database of veterans interested in working on the Project and of apprenticeship and employment opportunities for the Project.  To the extent permitted by law, the Unions will give credit to such veterans for bona fide, provable past experience.

## ARTICLE 14 – SAFETY PROTECTION OF PERSONS AND PROPERTY

### SECTION 1.     SAFETY REQUIREMENTS

Each Contractor will ensure that applicable OSHA requirements and other requirements set forth in the contract documents are at all times maintained on the Project and the employees and Unions agree to cooperate fully with these efforts. Employees must perform their work at all times in a safe manner and protect themselves and the property of the Principal Contractor, Contractor and the Owner from injury or harm. Failure to do so will be grounds for discipline, including discharge.

### SECTION 2.     CONTRACTOR RULES

Employees covered by this Agreement shall at all times be bound by the reasonable safety, security, and visitor rules as established by the Contractors and the Principal Contractor for this Project. Such rules will be published and posted in conspicuous places throughout the Project. Attachment B Siemens Power Project Work rules are included in total.

### SECTION 3.     INSPECTIONS

The Contractors and Principal Contractor retain the right to inspect incoming shipments of equipment, apparatus, machinery and construction materials of every kind.

### SECTION 4.     SUBSTANCE ABUSE PREVENTION

The use, consumption, sale, transfer, purchase and/or possession of a controlled substance and/or alcohol during working hours or while on the Project Site, and reporting for work under the influence of a controlled substance or alcohol are prohibited. Accordingly, the parties have agreed to appropriate procedures and safeguards for substance abuse screening for drugs and alcohol, including pre-employment, reasonable suspicion and post-incident, and these are set forth at attached Exhibit "D."

## ARTICLE 15 – NO DISCRIMINATION

### SECTION 1.     COOPERATIVE EFFORTS

The Contractors and Unions agree that they will not discriminate against any employee or applicant for employment because of race, color, religion, sex, national origin or age in any manner prohibited by law or regulation.

### SECTION 2.     LANGUAGE OF AGREEMENT

The use of the masculine or feminine gender in this Agreement shall be construed as including both genders.

## ARTICLE 16 – GENERAL TERMS

### SECTION 1.     PROJECT RULES

Principal Contractors and the Contractors shall establish such reasonable Project rules as are appropriate for the good order of the Project. These rules will be explained at the pre-job conference and posted at the Project site and may be amended thereafter as necessary. Failure of an employee to observe these rules and regulations shall be grounds for discipline, including discharge. The fact that no order was posted prohibiting a certain type of misconduct shall not be a defense to an employee discipline or discharged for such misconduct when the action taken is for cause.

**SECTION 2.**          **TOOLS OF THE TRADE**

The welding/cutting torch and chain fall are tools of the trade having jurisdiction over the work performed. Employees using these tools shall perform any of the work of the trade. All other tools shall be used in accordance with local area practice. There shall be no restrictions on the emergency use of any tools or equipment by any qualified employee or on the use of any tools or equipment for the performance of work within the employee's jurisdiction.

**SECTION 3.**          **SUPERVISION**

Employees shall work under the supervision of the craft foreperson or general foreperson.

**SECTION 4.**          **TRAVEL ALLOWANCES**

There shall·be no payments for travel expenses, travel time, subsistence allowance or other such reimbursements or special pay except as expressly set forth in this Agreement and in Exhibit "A" limited to travel expenses.

**SECTION 5.**          **FULL WORK DAY**

Employees shall be at their staging area at the starting time established by the Contractor and shall be returned to their staging area by quitting time after performing their assigned functions under the supervision of the Contractor. The signatories reaffirm their policy of a fair day's work for a fair day's wage.

**SECTION 6.**          **COOPERATION**

Principal Contractor and the Unions will cooperate in seeking any NJ Department of Labor approvals that may be required for implementation of any terms of this Agreement.

**ARTICLE 17 – SAVINGS AND SEPARABILITY**

**SECTION 1.**          **THIS AGREEMENT**

In the event that the application of any provision of this Agreement is enjoined, on either an interlocutory or permanent basis, or otherwise found in violation of law, the provision involved shall be rendered, temporarily or permanently, null and void but the remainder of the Agreement shall remain in full force and effect. In such event, the Agreement shall remain in effect for

contracts already bid and awarded or in construction where the Contractor voluntarily accepts the Agreement. The parties to this Agreement will enter into negotiations for a substitute provision in conformity with the law and the intent of the parties for contracts to be let in the future.

**SECTION 2.**        **THE BID SPECIFICATIONS**

In the event that Owner's bid specification's, or other action requiring that a successful bidder become signatory to this Agreement is enjoined, on either an interlocutory or permanent basis, or otherwise found in violation of law such requirement shall be rendered, temporarily or permanently, null and void but the agreement shall remain in full force and effect to the extent allowed by law. In such event, the Agreement shall remain in effect for contracts already bid and awarded or in construction where the Contractor voluntarily accepts the Agreement. The parties will enter into negotiations as to modifications to the Agreement to reflect the court action taken and the intent of the parties for contracts to be let in the future.

In the event that the Project site work is amended to require that Project Work is subject to public bidding laws, this Agreement will be made available to, and will fully apply to any successful bidder for the Construction Work on the Project who signs a Letter of Assent without regard to whether that successful bidder performs Construction Work at other sites on either a union or non-union basis and without regard to whether employees of such successful bidder are, or are not, members of any union.

**SECTION 3.**        **NON-LIABILITY**

In the event of an occurrence referenced in Section 1 or Section 2 of this Article, neither Owner, or any Contractor, or any signatory Union shall be liable, directly or indirectly, for any action taken, or not taken, to comply with any court order, injunction or determination. Project bid specifications will be issued in conformance with court orders then in effect and no retroactive payments or other action will be required if the original court determination is ultimately reversed.

**SECTION 4.**        **NON-WAIVER**

Nothing in this Article shall be construed as waiving the prohibitions of Article 7 as to signatory Contractors and signatory Unions.

**ARTICLE 18 – FUTURE CHANGES IN EXHIBIT "A" AREA CONTRACTS**

**SECTION 1.**        **CHANGES TO AREA CONTRACTS**

.1       The CBA's listed in Exhibit "A" to this Agreement shall continue in full force and effect until the Contractor and/or Union parties to the Area CBA's (which are the basis for Exhibit "A") notify Principal Contractor in writing of the mutually agreed upon changes in provisions of such agreements which are applicable to the Project, and their effective dates.

.2     It is agreed that any provisions negotiated into the CBA's listed Exhibit "A" will not apply to work on this Project if such provisions are less favorable to this Project than those uniformly required of contractors for construction work normally covered by those agreements; nor shall any provision be recognized or applied on this Project if it may be construed to apply exclusively, or predominantly, to work covered by this Project Agreement.

.3     Any disagreement between signatories to this Agreement over the incorporation into the CBA's listed in Schedule "A" or provisions agreed upon in the re-negotiation of Area CBA's shall be resolved in accordance with the procedure set forth in Article 9 of this Agreement.

**SECTION 2.    LABOR    DISPUTES    DURING    AREA    CONTRACT NEGOTIATIONS**

The Unions agree that there will be no strikes, work stoppages, sympathy actions, picketing, slowdowns or other disruptive activity or other violations of Article 7 affecting the Project by any Local Union involved in the renegotiation of Area Local Collective Bargaining Agreements, nor shall there be any lock-out on this Project affecting a Local Union during the course of such renegotiations.

**ARTICLE 19 – MISCELLANEOUS**

.1     The terms and conditions of this Agreement will be binding upon and inure to the benefit of the parties hereto and their successors, assignees and legal representatives and to the Contractors and Subcontractors performing construction work on the project. Any notice, request demand, instruction, or other document to be given or served will be in writing and will be delivered personally with a receipt requested thereof or by fax or sent by federal express at the respective addresses set forth below:

All notices to Principal Contractor will be sufficient if sent to:

Siemens Energy, Inc.
Attention *Albert J. Woelfle*
*110 MarcAlyson Court*
*Cary, NC 27511*

All notices to County Council will be sufficient if sent to:

Rick Sabato, President
Bergen County Building and Construction Trades Council
205 Robin Road
P.O. Box 1
Paramus, NJ 07652

.2    This Agreement will be governed by the laws of the State of New Jersey

.3    This Agreement will be in effect during and until the end of construction work on the
Hudson Transmission Projects as evidenced by a Notice of Final Completion issued by
the Owner to Principal Contractor.

IN WITNESS WHEREOF the parties have caused this Agreement to be executed and effective
as of the _1st_ day of ~~November~~ ,~~2011.~~ January, 2012

Siemens Energy, Inc.                    Bergen County Building and
                                        Construction Trades Council AFL-CIO

By: _____             By: _____
     Albert Wachle                            
Title: Director Business Administration  Title: President

UNION AFFILIATES:

Asbestos Workers, Local 32

Boilermakers, Local 28

Bricklayers and Allied Crafts, Local 4

Carpenters, Locals 253

Dockbuilders, Local 1456

Electrical Workers, Local 164

Elevator Constructors, Local 1

Operating Engineers, Local 825

Ironworkers, Local 483

Pipefitters, Local 274

Laborers, Local 592

Heavy Construction Laborers, Local 472

Painters and Allied Trades,

–29–

District Council Local 711

Plumbers, Local 14

Resilient Flooring, Local 2212

Roofers, Local 10

Sheet Metal Workers, Local 25

Sprinkler Fitters, Local 696

Tile/Marble/Terrazo Workers, Local 7

Teamsters, Local 560

Operative Plasterers, Local 29

Millwrights, Local 715

Sheet Metal Workers, Local 137

Laborers, Local 78

PROJECT LABOR AGREEMENT
COVERING CONSTRUCTION OF THE
HUDSON TRANSMISSION PROJECT
HVDC CONVERTER STATION
1 RAILROAD AVENUE
RIDGEFIELD, NEW JERSEY

### TELE-DATA CRAFT ADDENDUM

The parties hereby agree that all Tele-data work and associated electrical work performed on the Project Sites during construction shall be done by employees represented by the signatory unions. For the purpose of this Agreement, Tele-data work shall include, but not be limited to, the following: All receiving, placement, installation, operational testing and inspection and such maintenance, repair and service as necessary to make operational the radio, television, video, data, voice, sound, emergency call, microwave and visual production and reproduction apparatus, equipment and appliances used for domestic, commercial, education and entertainment purposes; all installation and erection of equipment, apparatus or appliance, cables and/or wire, emergency power (batteries) and all directly related work which becomes an integral part of the telecommunication and/or telecommunications related systems repair and service maintenance work of telecommunications systems and devices including, but not limited to, Private Branch Exchanges (PBX-PABX), Key equipment-owned, CCTV, CATV, card access, Systems RS 232 other net and/or any local area network system associated with computer installation.

Siemens Energy, Inc.

SIGNATORY UNION:
Electrical Workers, Local 164

By: _Willing_

       Albert Woethe

By: _____

Title: _Director Business Administration_

Title: _____

PROJECT LABOR AGREEMENT
COVERING CONSTRUCTION OF THE
HUDSON TRANSMISSION PROJECT
HVDC CONVERTER STATION
1 RAILROAD AVENUE
RIDGEFIELD, NEW JERSEY

### SHEET METAL CRAFT ADDENDUM

Principal Contractor and all signatory contractors and their subcontractors of whatever tier agree that when subcontracting for prefabrication of H.V.A.C. duct and other related sheet metal, such prefabrication shall be subcontracted to fabricators who pay their employees engaged in such fabrication not less than the prevailing wage for comparable sheet metal fabrication as established under agreements between local affiliates of Sheet Metal Workers International Association and local sheet metal fabricators.

Principal Contractor and all signatory contractors and their subcontractors of whatever tier and the Sheet Metal Workers International Association agree to cooperate with fabrication shops referenced in the Addendum. This joint effort will be directed at improving fabricators' competitiveness through the application of continuous improvement principles.

Siemens Energy, Inc.                          SIGNATORY UNION:
                                              Sheet Metal Workers International
                                              Association, Local 25

By: _____               By: _____
      Albert Woo Hk.
Title: Director, Business Administration      Title: _____

PROJECT LABOR AGREEMENT
COVERING CONSTRUCTION OF THE
HUDSON TRANSMISSION PROJECT
HVDC CONVERTER STATION
1 RAILROAD AVENUE
RIDGEFIELD, NEW JERSEY

Field (

### TEAMSTERS LOCAL 560 ADDENDUM

1.  Teamsters Local 560 ("Union") jurisdiction shall include [this jurisdiction (item #1) shall extend for the life of the Agreement]:

    .1 Delivery of sand, aggregates, cement, and concrete shall be performed by teamster drivers.

2.  Deliveries by over-the-road carriers shall be allowed whether Union or Non-union.

3.  No deliveries shall be obstructed in any way for any reason.

4.  Principal Contractor recognizes the right of the Union, subject to the Principal Contractor's agreement on the individual person named, to designate a working truck foreman. The one (1) Truck Foreman shall work for and be shared by all the Contractors on the Project. The duties of the Truck Foreman shall be assigned by the Principal Contractor and shall include duties in connection with receiving, shipping and distribution of materials and coordination of routine trucks and drivers. When not assigned to other duties, the Truck Foreman shall drive a truck. This section will only apply, and a Truck Foreman shall only be required, when there is work to be completed on the Project that is covered by the jurisdiction of the Union.

5.  Deliveries of equipment or materials to any off-site delivery, warehousing, parking, or staging area of the Project (collectively, "Off-site Storage Areas") may be made by Union or Non-union carriers. Deliveries of equipment or materials from any Off-site Storage Area to the Converter Station Site or movement of equipment or materials between Off-site Storage Areas shall be required to be by Members of the Union. When the deliveries reach the Converter Station Site located at 1 Railroad Avenue, Ridgefield, New Jersey, then work performed on the Converter Station Site which is covered by the Local 560 Teamsters CBA which is not claimed by other building trades unions will be performed by members of the Union.

6.  Any materials delivered to or from within the Project Site as defined in Article 3 may be made by the Vendor or Contractor's driver, regardless of driver's union membership or non-membership.

– 33 –

Siemens Energy, Inc.

**SIGNATORY UNION:**
International Brotherhood of Teamsters,
Local Union 560

By: _____
Albert Werth

By: _____

Title: Director Business Administration

Title: President

EXHIBIT "B"

LETTER OF ASSENT

Re:    Project Labor Agreement
       Bergen County Building & Trades Council, AFL-CIO
       Siemens Energy, Inc., dated ~~November ___, 2011~~
       (the "Agreement")    *January 1, 2012*

Dear Sir:

Pursuant to the above referenced Agreement, the undersigned as duly authorized officers of
(insert Contractor and/or Subcontractor name) hereby agrees that it will be bound by and will
comply with all terms and conditions of the referenced Agreement and any amendments thereto.
Contractor recognizes the Unions, as signatory to the Agreement are the collective bargaining
representatives of union members employed on the Project.

The undersigned further agrees that the Collective Bargaining Agreement ("CBA") in effect
between the Unions executing the Agreement and the Contractor or subcontractors executing this
letter of assent are applicable to the scope of Construction Work to be performed by our firm,
except as such CBA may be modified by the provisions of the Agreement.

All notices required to be sent to [insert Contractor / Subcontractor] will be sufficient if sent to:

Attention_____
_____
_____

This Letter of Assent will remain in effect until the expiration of the Agreement or until our
scope of work at the Project is completed, whichever is later.

Sincerely,

[Company Name]

Name:_____
Title:_____

Date:    _____

cc: (Unions employed by Contractor)

EXHIBIT "C"

LIST OF PRE-FABRICATED AND PRE-ASSEMBLED EQUIPMENT

# Hudson Transmission Project
Pre-assembled Equipment - Project Labor Agreement _PLA

**AC Yard (High Voltage)**

| # | Item | Status | Notes |
|---|------|--------|-------|
| 1 | Circuit Breaker | Fully manufactured | requires assembly and erection on site |
| 2 | Disconnect | Fully manufactured | requires assembly and erection on site |
| 3 | Current Transformer | Fully manufactured | requires erection on site |
| 4 | Grounding Switch | Fully manufactured | requires assembly and erection on site |
| 5 | Capacitor Tower for AC Filter | Fully manufactured | requires assembly and erection on site |
| 6 | Surge Arrestor for AC Filter | Fully manufactured | required erection on site |
| 7 | Reactor Sets for AC Filter | Fully manufactured | requires assembly and erection on site |
| 8 | Capacitor Sets for AC Filter | Fully manufactured | requires assembly and erection on site |
| 9 | Reactors for AC Filter | Fully manufactured | requires assembly and erection on site |
| 10 | Current Transformers for AC Filter | Fully manufactured | required erection on site |
| 11 | HF Noise Filter | Fully manufactured | requires assembly and erection on site |
| 12 | Inductive Voltage Transformer | Fully manufactured | required erection on site |
| 13 | Capacitive Voltage Divider | Fully manufactured | required erection on site |
| 14 | Cable Sealing End | Fully manufactured | requires assembly / cable connection / erection on site |
| 15 | Marshaling Kiosk | Fully manufactured | electrical external connections and erection on site |
| 16 | Converter Transformer | Fully manufactured | requires assembly / oil filling / erection on site |
| 17 | Wall Bushing AC Side | Fully manufactured | Requires assembly only onto transformer and installation / sealing into building wall |
| 18 | HV AC Reactor | Fully manufactured | requires assembly and erection on site |
| 19 | HV AC Cable Sealing Ends | Fully manufactured | requires assembly / cable connection / erection on site |

**Valve Hall (High Voltage)**

| # | Item | Status | Notes |
|---|------|--------|-------|
| 20 | Grounding Switch | Fully manufactured | requires assembly and erection on site |
| 21 | Surge Arrestors | Fully manufactured | requires erection on site |
| 22 | Valve Units | Fully manufactured | requires assembly of valve towers and erection on site |
| 23 | Valve Cooling System | Fully manufactured | requires assembly and erection on site |

**Control Building**

| # | Item | Status | Notes |
|---|------|--------|-------|
| 24 | UPS System / Batteries | Fully manufactured | electrical wire connections and erection on site |
| 25 | AC Control and Protection Panels | Fully manufactured | electrical wire connections and erection on site |
| 26 | DC Control and Protection Panels | Fully manufactured | electrical wire connections and erection on site |
| 27 | Transient Fault Recorder | Fully manufactured | electrical wire connections and erection on site |
| 28 | RTU Control Panels | Fully manufactured | electrical wire connections and erection on site |
| 29 | Remote Control Interface (RCI) | Fully manufactured | electrical wire connections and erection on site |
| 30 | HMI Control Desk | Fully manufactured | electrical wire connections and erection on site |
| 31 | Telecom Panels | Fully manufactured | electrical wire connections and erection on site |
| 32 | Valve Cooling Control Panels | Fully manufactured | electrical wire connections and erection on site |

**Aux Power**

| # | Item | Status | Notes |
|---|------|--------|-------|
| 33 | Auxiliary Power Generator - Diesel (if required) | Fully manufactured | requires erection on site |
| 34 | Auxiliary Power Transformer | Fully manufactured | requires erection on site |
| 35 | Medium Voltage Switchgear | Fully manufactured | electrical external connections and erection on site |
| 35 | Low Voltage Switchgear | Fully manufactured | electrical external connections and erection on site |

**Fire Fighting**

| # | Item | Status | Notes |
|---|------|--------|-------|
| 36 | Control Panels | Fully manufactured | electrical external connections and erection on site |
| 37 | Diesel Engine Driven Fire Pump (if required) | Fully manufactured | requires erection on site |

**DC Side**

| # | Item | Status | Notes |
|---|------|--------|-------|
| 38 | Smoothing Reactor | Fully manufactured | requires assembly and erection on site |
| 39 | DC Current measuring Device | Fully manufactured | requires assembly and erection on site |
| 40 | DC Voltage measuring Device | Fully manufactured | requires assembly and erection on site |
| 41 | Disconnect | Fully manufactured | requires assembly and erection on site |

EXHIBIT "D"

SUBSTANCE ABUSE POLICY

EXHIBIT "D"

2012 PROJECT LABOR AGREEMENT
COVERING CONSTRUCTION AT
HUDSON TRANSMISSION PROJECT
HVDC CONVERTER STATION
1 RAILROAD AVENUE
RIDGEFIELD, NEW JERSEY
(the "PROJECT")

## SUBSTANCE ABUSE PREVENTION AND TESTING

This Exhibit D, by reference and attachment made part of the Agreement, incorporates the Contractor's Alcohol and Drug Free Workplace Program (set forth below) as the only drug and alcohol testing program applicable to this Project. All signatory parties to this Agreement shall comply with this Exhibit E as approved for this Project.

**1.0    Purpose**

Siemens Energy, Inc. ("SIEMENS") has a strong commitment to providing a safe and secure workplace which includes zero tolerance of substance abuse on the Converter Station Site. Consistent with this goal, all Contractors are required to meet and comply with the requirements of the Alcohol and Drug Free Workplace Program set forth below.

**2.0    Definitions**

2.1    Substance Abuse - means the misuse or unlawful use of alcohol or any of the drugs or controlled substances listed below.

2.2    Contract Employee - Except as otherwise approved in writing by SIEMENS, any representative or employee of any Contractor, subcontractor, supplier, vendor, or consultant who requires access to the Converter Station Site premises or who has been granted permission to enter the premises for the purpose of performing a contracted task or service.

2.3    Converter Station Site - This term includes the Project work site, parking areas, buildings and facilities adjacent to the Project work site, temporary off-site storage or staging areas, vehicles, trailers, tool boxes, containers or lockers rented or owned by SIEMENS, the Contractor, the Owner, subcontractors, independent contractors, or other individuals on the Converter Station Site.

**3 0    Testing Methods and Limits**

Each Contractor employee shall provide a urine specimen that will be screened for Amphetamines AMP 1,000, AMP 300), Barbiturates (BAR), Benzodiazephines (BZO), Cocaine (COC300, COC150), Marijuana   (THC),   Methadone   (MTD),   Methamphetamine   (mAMP1000,   mAMP300)

Methylenedioxymethamphetamine (MDMA), Opiate (MOP300, OPI 2,000), Oxycodone, Phencyclidine (PCP), Propoxyphene, Tricyclic Antidepressants. These substances are referred to herein collectively as Drugs. Specimen analysis shall be by rapid one step screening process for the simultaneous, qualitative detection of multiple drugs and drug metabolites in human urine. Samples that are inconclusive shall be confirmed by Gas Chromatography/Mass Spectrometer (GC/MS). Screening detection levels and GC/MS confirmation levels, for each of the substances being tested for, shall be in accordance with the current SAMSHA recommendations. A SAMSHA certified laboratory shall be used for all immunoassay and GC/MS analysis.

Each Contractor employee shall be tested for alcohol by means of a breathalyzer. A Blood Alcohol Content Equivalent of .04 or higher is considered a positive test result.

### 4.0    Pre-employment/Pre-access Drug Testing

4.1    Prior to any Contractor employee performing services at the Converter Station Site, he/she shall consent in writing to these Alcohol and Drug Free Workplace Program Requirements, including drug and alcohol testing, and the release of test results to SIEMENS. This release and consent shall be in a form satisfactory to SIEMENS. Finally, the Contractor employee shall certify in writing that he/she is Substance Abuse free and has had no known positive Substance Abuse tests within the previous six-month. No employee will be permitted to perform work on the Converter Station Site unless such employee has passed pre-employment or pre-access drug and alcohol testing within the fourteen-month period immediately prior to commencing work and each employee will be retested at a frequency of 10-14 months not less than 10 months nor not more than 14 months. The employee will be given advance notice prior to being retested. All test data will be on file with the administrator.

4.2    Anyone who has had a confirmed positive Substance Abuse test result shall not perform services on the Converter Station Site for a six-month period following such positive test result. Provided, however, that six-month period may be reduced, in the sole discretion of SIEMENS, to not less than three (3) months if the Contractor employee presents a certification from a bona fide treatment center indicating the Contractor employee has successfully completed a bona fide program of counseling or rehabilitation and is Substance Abuse free and has a negative result in a return-to-assignment Substance Abuse test. The Contractor's employee shall also make available to SIEMENS any other related medical records SIEMENS deems necessary. Any Contractor employee seeking reassignment under this section shall be subject to additional pre-assignment testing.

4.3    Anyone who has a positive, pre-assignment Alcohol test will be given the opportunity to have a second Alcohol test performed the following scheduled testing day. If this second test is negative the individual will be allowed to perform services on the Converter Station Site. If the second test is positive the individual will not be permitted to perform services for a six-month period following such positive test result. Provided, however, that this six-month period may be reduced, in the sole discretion of SIEMENS, to not less than three (3) months if the Contractor employee presents a certification from a bona fide treatment center indicating the Contractor employee has successfully completed a bona fide program of counseling or rehabilitation and is Substance Abuse free and has a negative result in a return-to-assignment Substance Abuse test. The Contractor employee shall also make available to SIEMENS any other related medical records SIEMENS deems necessary. Any Contractor employee seeking reassignment under this section shall be subject to additional pre-assignment testing.

4.4     Any refusal by a Contractor employee to sign a release and consent satisfactory to SIEMENS or be subject to Drug and Alcohol testing or cooperate with the Medical Review Officer (MRO) shall subject the Contractor employee (at the sole discretion of SIEMENS) to permanent removal from the Converter Station Site.

4.5     Each Contractor shall be provided with information confirming which of its employees or site personnel have taken and passed the pre-assignment drug and alcohol testing described herein.

5.0     **For Cause Testing**

5.1     Post Accident Drug and Alcohol Testing shall be performed on any Contractor employee suffering a work related injury that involves off site medical treatment and/or examination.

5.2     Post Accident Drug and Alcohol Testing shall be performed on any Contractor employee(s) involved in an incident that results in or could have resulted in personal injury to another or other than minor property damage.

5.3     For Cause Drug and Alcohol Testing may be performed on any Contractor employee who exhibits obvious signs of intoxication or drug or alcohol use, including the odor of alcohol, slurred speech, lack of proper balance, staggering, radical change in behavior, hard evidence of the presence of alcohol, drugs or drug paraphernalia in the employee's immediate vicinity or any combination of the aforementioned.  The manager who refers the employee for testing shall be responsible to document his or her observations which are the basis for the referral.

5.4     Any Contractor employee who tests positive for Drugs or Alcohol, or any refusal by a Contractor employee to comply with the testing requirements established in 4.1, 4.2 and 4.3 will result in the Contractor employee's being denied access to the Converter Station Site for a period of six months and being considered for access to the Converter Station Site only after a negative result in a return-to-assignment Substance Abuse test.

6.0     **General Provisions**

6.1.    Contractor shall give all Contractor employees timely notice of these requirements and furnish a copy of this policy to all Contractor employees.

6.2     Contractor agrees to take any and all reasonable actions to ensure Contractor employees are qualified to work under these requirements.  Such reasonable action includes, but is not necessarily limited to, notification of the appropriate labor organization representatives.

6.3     Unlawful possession, concealment, use, purchase, sale, manufacture, dispensation or distribution of illegal drugs or un-prescribed controlled substances or alcohol on the Converter Station Site will subject the Contractor employee to immediate removal from the premises and shall bar the Contractor employee from returning to the Converter Station Site for a minimum of six months, which return shall, in any event, be subject to approval by SIEMENS.

6.4     Contractor employees shall not be responsible for any of the costs of administration of this Substance Abuse Prevention and Testing Program, including lost production hours resulting from the employees' compliance with Program requirements.

SIEMENS ENERGY, INC.
CONTRACTOR SUBSTANCE ABUSE TESTING
CERTIFICATION, CONSENT AND RELEASE

I have been supplied a copy of the SIEMENS Drug and Alcohol Testing Program Requirements.

I have thoroughly reviewed and understand this Certification, Consent and Release, as well as the SIEMENS' Contractor Drug Free Workplace requirements. My signature below has been obtained voluntarily and I understand and consent to the application of these documents to me. This consent includes, but is not limited to, the following:

1.      I understand, agree, and specifically authorize Pre-assignment, Post-Accident and For Cause drug testing in accordance with the terms of these Drug and Alcohol Testing Program Requirements.

2.      I understand, agree and specifically authorize the release of the results of any such Substance Abuse test result to SIEMENS and my employer and my labor organization (or its designee) to which I belong. I understand and agree that such results and information may be used to implement this policy in accordance with the interests of SIEMENS and/or my employer which I recognize as legitimate.

3.      I understand and agree that the term of my consent is indefinite. However, it can be revoked at any time by me except to the extent that action has been taken. Such revocation must be in writing and is not effective until received by both my employer and SIEMENS. In the event that I revoke my consent, I understand and agree that I am subject to a permanent bar from the Converter Station Site.

I certify that for at least the past six months, I have been Substance Abuse free and have had no positive Substance Abuse test result. I understand and agree that if this statement is false, I am subject to immediate dismissal from the Converter Station Site.

_____          _____
Signature                                                    Print Name

_____          _____
Date                                                          Address

_____          _____
Social Security #                                        Phone Number

_____
Employer

_____
Union (if applicable)

_____
Witness Signature

_____
Print Witness Name

_____
Date of Witness Signature